IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LEA ANN LAVIELLE and<br>MICHAEL LAVIELLE, Individually<br>and on behalf of their minor<br>children, H.L., A.L., and D.L.,<br><br>Plaintiffs,<br><br>v.<br><br>DANIEL BERTRAM ACOSTA,<br><br>Defendant. | Case No. CIV-16-1002-R |

## ORDER

Plaintiffs Lee Ann and Michael Lavielle, who are named in a malicious prosecution counterclaim filed by Defendant Daniel Bertram Acosta, seek summary judgment on the claim. (Doc. No. 55). Daniel Acosta responded in opposition to the motion, and clarified therein that the basis for his malicious prosecution claim is an affidavit executed by Michael Lavielle on September 4, 2015, which Mr. Acosta contends was the basis of a criminal prosecution against him that was ultimately dismissed without prejudice. As such, the Court will confine its consideration to whether Michael Lavielle is entitled to summary judgment on Daniel Acosta's malicious prosecution claim under Kansas law and the motion is granted as it applies to Lea Ann Lavielle.

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving

party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).[1] Michael Lavielle relies upon the latter in the instant motion, noting in the Reply that he filed a "no evidence" summary judgment motion. (Doc. No. 60, p. 1). Accordingly, the question is whether Daniel Acosta's response presents sufficient evidence to bear the burden of proof with regard to his malicious prosecution claim.

The parties do not address which law applies to this case, which arises out of actions occurring in Kansas, and both assume Kansas law applies. To maintain an action for malicious prosecution under Kansas law, Mr. Acosta must establish: (1) that Michael Lavielle instituted the criminal proceeding of which complaint is made; (2) in doing so Michael Lavielle acted without probable cause and with malice; (3) the criminal

---

[1] Michael Lavielle's motion does not comply with Local Civil Rule 56.1, which requires that a brief in support of a motion for partial summary judgment shall begin with a section stating the material facts to which the movant contends no genuine dispute exists and that each statement shall be followed by citation, with particularity to any evidentiary material upon which the party relies in support of its position. Michael Lavielle cites to no evidence in support of his Statement of Uncontroverted Material Fact although he subsequently quotes from and attaches the deposition of Mr. Acosta within the brief.

proceeding terminated in his favor; and (4) Daniel Acosta sustained injury as a result of the criminal proceeding. *Crow v. United States*, 659 F.Supp. 556, 571 (D.Kan. 1987). In addition to asserting that Daniel Acosta cannot establish the elements of a malicious prosecution claim, Michael Lavielle asserts that finding in Daniel Acosta's favor would infringe on Michael Lavielle's rights under the First Amendment, specifically his right to petition the government for redress of grievances.

The evidence presented by the parties establishes that on September 4, 2015, Michael Lavielle completed a "Sworn Affidavit" for an incident that allegedly occurred between him and Daniel Acosta. Mr. Lavielle asserted in the affidavit, completed for the Sheriff of Morton County, that on that date he and Mr. Acosta exchanged words outside their homes and that Mr. Acosta "pulled out a gun that was in a case" and later exhibited a pocket knife and made threatening statements to Mr. Lavielle. Mr. Acosta completed a similar form on that same date and asserted therein that Mr. Lavielle "flipped him off" for no reason and yelled at him, asking if there was a problem. His affidavit does not indicate that he exhibited either a gun or a knife. Daniel Acosta also includes a Kansas Standard Arrest Report executed on September 7, 2015, by Amanda Wray, which states:

> On September 4, 2015 at approximately 1630 hours while on a phone call in dispatch, I witnessed Michael Lavielle pull up to the LEC and walk up to the door. I also noticed Michael's wife Lea Lavielle and their children run up to the door. While they are in the lobby explaining to dispatch what they needed, I would see Daniel Acosta approaching the LC. I told dispatch to move the Lavielle[]s into the interview room. Once I was able to make contact with Michael, he told me that he had a confrontation with Daniel Acosta. Michael said that Daniel had a handgun that he picked up in a manner that would allow Michael to see it and then placed it in the console area of his vehicle. Michael said that Daniel then started to pull off and Michael flipped Daniel off. Daniel returned the gesture driving a short distance and

> then stopped and backed up. Michael said that Daniel then exited the vehicle and came around to the back side standing in the street and yelled to Michael "you have a problem?" Michael said that Daniel pulled out a pocket knife after saying this. Michael responded, "we have a big problem." Daniel then was heard to say, "come on get your ass over hear." Michael saw Daniel open the pocket knife at this time. More words were exchanged then Daniel left. Michael loaded up his family and came to the LEC. Daniel stated that he was in his vehicle on the phone leaving his home and noticed Michael in his yard talking to someone. Michael then flipped him off, so Daniel said that he got out asking if he had a problem. Daniel said that he had a pen in his hand. Daniel said the problem was Michael was yelling at him. Daniel said that he left and went to the county attorney's office. Daniel was told to come to the LEC to make a report. Daniel was arrested on Agg Assault w/deadly weapon, criminal threat and disorderly conduct.

Doc. No. 58-3. The remaining summary judgment evidence consists of an excerpt form a deposition of Mr. Acosta wherein he states that "they [Lee Ann and Michael Lavielle] made an accusation that I had pulled a gun on Michael Laveille and then a knife and that turned out to be not true, counsel." Doc. No. 55-1, Deposition of Acosta, p. 407. Mr. Acosta responded affirmatively when asked, "So the statements in the declarations in your view were false?" *Id.* at 408. He admitted, however, that he lacked evidence that the Laveille's acted with the intent to hurt him. *Id.* at 409 ("Well, I don't have much evidence right now, counsel."). With this evidence in mind, and construing the evidence in the light most favorable to Mr. Acosta, the non-movant, the Court finds that he fails to present evidence in support of each element of his malicious prosecution claim, and therefore, Michael Lavielle is entitled to summary judgment on this counterclaim.

The Court addresses only a single element of Mr. Acosta's malicious prosecution claim, that the criminal proceedings against him were terminated in his favor. In support of his position, Mr. Acosta presents an Order from the District Court of Morton County,

Kansas in Case No. 15-CR-90, *State of Kansas v. Daniel Acosta*. The parties thereto apparently presented an agreement to the court seeking dismissal without prejudice. The record, however, contains no evidence regarding why the criminal prosecution was terminated or why the dismissal was without prejudice. Thus, the Court is unable to discern that the termination of the proceedings was in favor of the accused, Mr. Acosta. As stated in the Restatement (Second) of Torts § 660, "[p]roceedings are 'terminated in favor of the accused,' as that phrase is used . . . throughout this Topic, only when their final disposition is such as to indicate the innocence of the accused." First, the dismissal of the underlying criminal action without prejudice was not a final disposition. *See State v. Perez*, 2017 WL 1035373, *3 (Kan.Ct.App. March 17, 2017)(Concluding that without prejudice dismissal of a criminal case was not a final judgment and noting, "[a]s generally understood, the phrase 'without prejudice' means there is no decision of the controversy on its merits. . . ."). Second, as noted by *Perez*, the without prejudice dismissal does not indicate that the issue of Mr. Acosta's criminal liability was adjudicated. There is simply no evidence establishing a reason for the dismissal that reflects on Mr. Acosta's innocence, the record is simply silent on the issue, and thus, Mr. Acosta has failed to meet his burden of production.

    Because Mr. Acosta is required to present evidence in support of each of the elements of a malicious prosecution claim and because his evidence fails with regard to this particular element, the Court need not consider the remaining arguments regarding the propriety of summary judgment on Mr. Acosta's malicious prosecution claim. The Motion for Partial Summary Judgment (Doc. No. 55) filed by Lee Ann and Michael Lavielle is

hereby **GRANTED**.

IT IS SO ORDERED this 3rd day of October 2017.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE